837 P.2d 154

Wesley A. CALDWELL,
Plaintiff/Appellant,

v.

PIMA COUNTY, a body politic, and the Pima County Board of Supervisors,
Defendants/Appellees.

No. 2 CA–CV 90–0273.

Court of Appeals of Arizona,
Division 2, Department B.

Aug. 22, 1991.
Review Denied Feb. 4, 1992.

Ronald J. Kalish, Tucson, for plaintiff/appellant.

Stephen D. Neely, Pima Co. Atty. by Christopher L. Straub, Tucson, for defendants/appellees.

## OPINION

FERNANDEZ, Judge.

Appellant Wesley Caldwell appeals from the superior court's ruling on his complaint for administrative review that the Pima County Board of Supervisors did not act illegally, arbitrarily, capriciously, or in abuse of its discretion in affirming the zoning enforcement hearing officer's finding that Caldwell had violated the county zoning code. Caldwell argues that the hearing officer had no jurisdiction to find him in violation, that the zoning code prohibits him from operating a legitimate business, that the zoning code is unconstitutional, and that it denies him equal privileges and immunities. We affirm.

Caldwell sells fruits and vegetables from his vehicle at various intersections within the county. On July 18, 1988, he was cited for violating the zoning code for "operating [a] mobile, open fruit-vegetable stand"[1] at the intersection of River Road and First Avenue, an area zoned CB–1. In a CB–1 zone, all "uses shall be conducted wholly within a completely enclosed building unless otherwise specified." Pima County Code § 18.43.020(A). The hearing officer found Caldwell in violation of the ordinance and imposed a fine of $750. Caldwell appealed that decision to the Pima County Board of Supervisors, which affirmed the hearing officer's decision.

---

1. Caldwell was also cited for having portable A-frame signs on a public right-of-way. He has not appealed from the finding that he violated the sign ordinance.

Caldwell then sought review pursuant to the Administrative Review Act, A.R.S. §§ 12–901 through 12–914. After the court reviewed the parties' memoranda of points and authorities and heard oral argument, it entered judgment affirming the action of the Board of Supervisors.

The specific facts in this case are difficult to determine. Although the hearing before the zoning officer was apparently reported, Caldwell expressly instructed the county not to file the transcript of the hearing as part of the record on review. The hearing before the Board of Supervisors apparently was not reported. Thus, we have before us only the hearing officer's finding that Caldwell was in violation and a summary of the events at the Board of Supervisors' hearing as reported in the supervisors' minutes.

## SUBJECT MATTER JURISDICTION

■ Caldwell's initial argument is that the zoning enforcement hearing officer had no jurisdiction to find him in violation of the zoning code. He contends that the code applies only to private lands and that only the Board of Supervisors has the authority to deal with public lands. That argument assumes that Caldwell's vehicle was a on public right-of-way at the time he was cited. The record, however, does not reflect exactly where his vehicle was located. It indicates only that his signs were on the public right-of-way, but his violation of the sign ordinance is not before us on appeal.

■ The county argues that the issue has been untimely raised because Caldwell did not raise it before the Board of Supervisors. In fact, the supervisors' minutes reflect that Caldwell's attorney conceded that the public right-of-way comes within the zoning code just as private land does. As Caldwell has pointed out, however, although the failure to timely raise an issue before an administrative tribunal generally waives the issue on review, that is not the case when a jurisdictional defect is alleged.

*Calixto v. Industrial Commission,* 126 Ariz. 400, 616 P.2d 75 (App.1980).

Nevertheless, we find no merit to Caldwell's argument. The authority he cites for his contention is § 18.05.030(A)(3) of the Pima County Code. However, that section governs the establishment of a boundary line where the placement of the line is uncertain. The specific subsection Caldwell cites actually governs the boundary location when a public right-of-way is vacated or abandoned; it has nothing to do with a hearing officer's authority to find zoning violations on public rights-of-way.

The legislature has enacted a series of statutes governing the planning and zoning authority of counties. A.R.S. §§ 11–801 through 11–866. Section 11–808(C) makes it "unlawful to erect, construct, reconstruct, maintain or use *any land* in any zoning district in violation of any regulation or any provision of any ordinance pertaining thereto." (Emphasis added.) That same section also provides that counties can appoint hearing officers to hear and determine zoning violations. A.R.S. § 11–808(E). The hearing officer thus clearly had jurisdiction to rule on Caldwell's violation.

## ZONING CODE AS PROHIBITION OF LEGITIMATE BUSINESS

■ Caldwell next argues that the zoning code regulations of CB–1 zoning have the effect of arbitrarily prohibiting peddlers from operating their otherwise legitimate businesses. He contends that sellers of agricultural products are granted special status because they are exempt from the annual license tax required of itinerant peddlers. A.R.S. § 42–1136(B). Contrary to Caldwell's assertion, however, that exemption does not grant him a special status under the Pima County Code. The statute exempting peddlers from the tax does not prohibit the county from regulating where peddlers can operate. Moreover, the zoning code does not prohibit peddlers absolutely; it merely prohibits businesses in CB–1 zones from operating in other than completely enclosed buildings.

The cases cited by Caldwell are inapposite. In *Germano v. Keenan*, 25 N.J.Super. 37, 95 A.2d 439 (1953), the court held that the city of Newark could not prohibit the plaintiffs from peddling their wares on certain city streets in the face of a state statute that granted war veterans the right to obtain a license to peddle throughout the state. In that case, the plaintiffs had been given a special status by the state, both by statute and by case law. Neither is the case here. In *People v. Gilbert*, 68 Misc. 48, 123 N.Y.S. 264 (N.Y.Co.Ct.1910), the court held that a municipal ordinance was invalid, both because the defendant had been granted special status as a veteran by a state statute and because the ordinance improperly distinguished between peddlers with pushcarts and those with carts drawn by horses. No such distinction exists in the zoning code at issue.

## CONSTITUTIONALITY OF CODE SECTION

■ Finally, Caldwell questions the constitutionality of the code section that requires all businesses in CB–1 zones to be conducted in completely enclosed buildings, arguing that the provision is clearly intended to impermissibly restrain competition between traveling merchants and merchants with fixed facilities.

■ When a statute is challenged on equal protection grounds, the court must apply one of three tests. *Bryant v. Continental Conveyor & Equipment Co.*, 156 Ariz. 193, 751 P.2d 509 (1988). The strict scrutiny test applies if "the statute imposes a burden upon a 'suspect' classification (e.g., race or religion) or impinges upon and limits a 'fundamental right.'" *Id.* at 196, 751 P.2d at 512. The right to pursue a particular occupation or to operate a particular business, however, is not a fundamental right. *Lupert v. California State Bar*, 761 F.2d 1325 (9th Cir.1985); *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir.1978); *Blue Sky Bar v. Town of Stratford*, 203 Conn. 14, 523 A.2d 467 (1987). The second test, the means-scrutiny analysis, is one of

limited application, employed to date only in areas involving gender and illegitimacy. *Bryant*. The third test, the rational basis test, is applicable in areas of economic regulation. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

■ Under the rational basis test, the equal protection clause "is only violated if the classification rests on grounds wholly irrelevant to the achievement of the state's objectives." *Bryant*, 156 Ariz. at 196, 751 P.2d at 512. Unless the statute is arbitrary or irrational, it will be upheld. *Id.*

As the county notes, the zoning code permits open air produce stands in areas that are more rural than CB–1 zones. Pima County Code §§ 18.13.020 (rural homestead zones), 18.14.020 (rural residential zones), 18.17.020 (suburban ranch zones), and 18.19.010 (suburban homestead zones). The zoning district in which Caldwell was operating, the most restricted local business zone, permits a large number of specifically enumerated businesses, all of which must be conducted within a completely enclosed building unless otherwise specified. Pima County Code §§ 18.43.-020(A); 18.43.030(B). Included in that list is a "[f]ruit or vegetable store." Pima County Code § 18.43.030(B)(38). Thus, Caldwell is not prohibited from operating his business in the zoning district. He is only required to operate it within an enclosed building, the same as every other business that operates in a CB–1 zone. Businesses in that district are also required to obtain certificates of compliance from the department of transportation, flood control district, traffic engineer, and health department director. Pima County Code § 18.43.020(B)(2).

The zoning code was adopted "[f]or the promotion and protection of the public health, peace, safety, comfort, convenience and general welfare" of the public. Pima County Code § 18.01.020(B). In establishing the challenged requirement for businesses in a CB–1 zone, the county appar-

ently sought to control the amount of traffic congestion and parking around businesses. Because that zone includes many small businesses, we find that a rational basis exists between the county's desire to control both traffic congestion and parking and the requirement that businesses be operated within completely enclosed buildings.

The cases Caldwell has cited do not alter that finding. In *People v. Ala Carte Catering Co.*, 98 Cal.App.3d Supp. 1, 159 Cal. Rptr. 479 (Super.Ct.1979), the court found no rational basis for that part of a municipal ordinance that prohibited catering trucks from operating within 100 feet of a fixed restaurant. No such distinction is made in the zoning code section before us. In both *N.J. Good Humor, Inc. v. Board of Commissioners of Bradley Beach*, 124 N.J.L. 162, 11 A.2d 113 (1940) and *Delight Wholesale Co. v. City of Overland Park*, 203 Kan. 99, 453 P.2d 82 (1969), the ordinances in question were held to be void because they completely prohibited peddlers within the municipal boundaries. That prohibition does not exist here.

We agree with the trial court that the Board of Supervisors did not act illegally, arbitrarily, capriciously, or in abuse of its discretion in affirming the hearing officer's determination that Caldwell violated the zoning code.

Affirmed.

ROLL, P.J., and HATHAWAY, J., concur.