705 P.2d 1379

HONEYWELL, INC.,
Petitioner Employer,

Aetna Technical Services,
Petitioner Carrier,

v.

John R. LITCHETT,
Respondent Employee,

the Industrial Commission of
Arizona, Respondent.

No. 1 CA–IC 3131.

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 15, 1985.

Jones, Skelton & Hochuli by Gregory L. Folger and Calvin Harris, Phoenix, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, Indust. Com'n of Arizona, Phoenix, for respondent.

Machmer, Schlosser & Meitz, P.C. by Ronald M. Meitz, Phoenix, for respondent employee.

## OPINION

CONTRERAS, Judge.

This is a review of an award for permanent impairment, which also determined that a January 11, 1983 notice of claim status violated the retroactivity limit of an Industrial Commission rule.[1] Three issues are presented: (1) whether reasonable evidence supports an October 14, 1982 stationary date; (2) whether the administrative law judge improperly imposed an automatic monetary penalty for the violation of Rule 18(A); and (3) whether Rule 18(A) exceeds the Industrial Commission's rule-making authority. Because the award for temporary total compensation was improper, we set aside the award for this reason only.[2]

On December 11, 1981, the respondent employee (claimant) injured his back at work. In early January, 1982, he was hospitalized and referred to treating neurosurgeon L. Philip Carter, M.D., who subsequently performed a discectomy. He released the claimant to return to work on March 1, 1982 but imposed restrictions on lifting and bending.

The claimant returned to work and was assigned his old job of assembling computer doors. According to the claimant, this work regularly forced him to exceed the medically imposed lifting and bending restrictions.[3] His supervisor ignored the claimant's complaints and pressured him to

1. A.C.R.R. R4–13–118(A) (Rule 18(A)) provides:
   Where there has been a notice of claim status issued, which has become final, accepting a claim for benefits, any subsequent notice of claim status which changes the claimant's amount of or entitlement to compensation or medical, surgical or hospital benefits, *shall not have retroactive effect for more than thirty (30) days from the date of issuance of such notice of claim status* unless the subsequent notice affects the entitlement to or amount of death benefits.

(Emphasis added.)

2. The Industrial Commission has filed an answering brief to defend its rule-making authority. Because we do not reach this issue, we also do not consider the Commission's standing to advocate this position.

3. Conflicting evidence was presented. The administrative law judge disregarded this conflict because of his disposition of the Rule 18(A) issue.

do the heavy work. The claimant returned to Dr. Carter in May for back tension and pain, and he missed work for a week because of this. Upon returning to his employment, he was again given heavy work. On June 9, 1982, he refused his supervisor's order to move some heavy computer doors and then hit him. He was fired over this altercation. On June 24, 1982, shortly after losing his job, the claimant filed for workers' compensation benefits. He did not look for other work within his restrictions until January, 1983.

The petitioner employer is self-insured. Its claims representative initially issued a notice of claim status on August 5, 1982, denying the claim but then rescinded the denial and issued a notice of claim status on October 10, 1982, accepting the claim. This acceptance also allowed temporary total compensation from December 24, 1981 to February 28, 1982. The part of this form notice for indicating that the claimant's disability status was temporary partial after February 28, 1982, was left blank.

The claimant received no workers' compensation after returning to work on March 1, 1982. In late November, 1982, his counsel sent a demand letter to the claims representative asserting the right to temporary total compensation from June 10, 1982 (the date the claimant stopped working because of being terminated for striking his supervisor) until October 13, 1982 (the last day before the back condition became stationary). On January 11, 1983, the claims representative issued a notice of claim status terminating temporary compensation with permanent impairment effective May 13, 1982.

The claimant timely protested the termination and also requested an investigation to determine his right to temporary total compensation. *See generally* A.R.S. § 23–1061(J). Hearings were scheduled before an administrative law judge to resolve all of these issues.[4]

Dr. Carter provided the dispositive medical evidence. He testified that although

the injury was "approaching the stationary state" on October 14, 1982, he needed to review a group consultation report before concluding that the condition was stationary. After reviewing the report, he concluded that the condition was stationary on November 1, 1982, with a five percent permanent impairment. On cross-examination, Dr. Carter conceded that to a reasonable medical probability the condition was stationary on October 14, 1982, and that it was clinically unchanged since May 13, 1982. He could only speculate, however, concerning a stationary date before October 14, 1982:

[A]s of May the 13th, ... I didn't feel that he was stationary. He did not seek any further medical care at that point, so, but I did not at that time feel that he was completely stationary. He was only four months following his surgery, and usually I give my patients longer than that before I say that they are stationary after that period of time. So, in retrospect, I would guess sometime, the first time that I really felt he was stationary was in November when I saw him, but I didn't see him in there, and *possibly* if I had seen him in there some place in between, I *might* have felt that he was stationary, but I didn't, so the date that I—the only date that I can give is November 1st.

Q. Did you say looking at it in retrospect ... that he was stationary at least on October 14th? Looking at it in retrospect.

\* \* \* \* \* \*

A. Yes, I would agree that at that point that he was stationary.

(Emphasis added.)

The administrative law judge issued the award finding that the claimant was stationary on October 14, 1982, with a five percent permanent impairment. He also found that the January 11, 1983 notice of claim status terminating temporary compensation violated retroactivity limits:

The current award does not dispose of this claim.

---

4. The claimant also filed a February 3, 1983 new injury claim alleging he reinjured his back when he returned to work for the petitioner.

8. Applicant has also raised the issue of the employer's violation of Rule 18 A ... in attempting to make the January 11, 1983 Notice retroactive more than 30 days to May 13, 1982, as the alleged time applicant's condition became stationary....

\*　　\*　　\*　　\*　　\*　　\*

*Davis v. Industrial Commission* ... and *Holmes Tuttle Broadway Ford v. Industrial Commission* ... both hold that such a retroactive Notice must be timely protested in order to have a penalty enforced. *Minghelli v. Industrial Commission* ... holds that such a retroactive Notice is not void. *Cardinale v. Industrial Commission* ... holds simply that the Rule does not apply to the Commission or Administrative Law Judge finding as to the time an applicant's condition becomes stationary. The Notice in that case was not violative of the Rule. *Simply because of the Rule, applicant is entitled to temporary total compensation from June 9, 1982 through October 13, 1982. Ability to earn or conscientious effort to find employment are not considerations.*

(Citations omitted, emphasis added.) After the award was affirmed on administrative review, this special action followed.

On review, the petitioners argue that the evidence does not support the October 14, 1982 stationary date. They concede that Dr. Carter testified he could not confirm a stationary date before then, but characterize this as mere medical opinion without factual foundation. According to the petitioners, the only factual foundation is that the claimant's condition was unchanged between May 13, 1982 and October 14, 1982. For this reason alone, they assert that the condition was stationary on May 13, 1982.

■ A condition is stationary when medical treatment will not improve it. *E.g., Field v. Industrial Commission*, 128 Ariz. 425, 626 P.2d 155 (App.1981). Expert medical evidence, therefore, is indispensable to prove when a condition becomes stationary. *Id.* at 428, 626 P.2d at 158. The standard of sufficiency for this medical evidence is reasonable medical probability.

*Cf. Payne v. Industrial Commission,* 136 Ariz. 105, 664 P.2d 649 (1983) (claimant must prove permanent impairment to a reasonable medical probability).

■ One flaw with the petitioners' argument is that the medical evidence for a stationary date before October 14, 1982, is purely speculative. Dr. Carter testified that if he had seen the claimant between May and October, 1982, he possibly might have felt the claimant was stationary before October 14, 1982. This speculative testimony cannot support an inference of an earlier stationary date. *See, e.g., Marquez v. Industrial Commission,* 18 Ariz. App. 16, 499 P.2d 747 (1972).

Another flaw with the petitioners' argument is that it ignores Dr. Carter's testimony that the claimant was not stationary on May 13, 1982. One reason for this conclusion was Dr. Carter's general policy concerning post-surgery recovery. But this was not the only reason: the claimant also reported a recent episode of back tension and pain, and Dr. Carter prescribed a muscle relaxant. Dr. Carter's opinion, therefore, has an individualized factual foundation.

In summary, not only is the medical evidence of a stationary date before October 14, 1982 speculative, but positive medical evidence establishes that the condition was not stationary on May 13, 1982. The only conclusion that this record supports is that the claimant's condition became stationary no sooner than October 14, 1982.

The petitioners next argue that the administrative law judge improperly imposed what they characterize as "an automatic monetary penalty" for the Rule 18(A) violation. This argument concedes that the January 11, 1983 notice exceeded the retroactivity limit of Rule 18(A). The sole issue concerns the effect of this violation.

This issue is one of first impression. Prior cases involving offending notices have not determined the effect of a violation because the notices had become final. *See Minghelli v. Industrial Commission,* 129 Ariz. 222, 630 P.2d 45 (App.1981); *Holmes*

*Tuttle Broadway Ford v. Industrial Commission,* 27 Ariz.App. 128, 551 P.2d 577 (1976); *Davis v. Industrial Commission,* 26 Ariz.App. 355, 548 P.2d 849 (1976). In contrast, the January 11, 1983 notice in our case was timely protested. The violation issue is therefore before us.

■ Rule 18(A) applies only to notices of claim status. *Cardinale v. Industrial Commission,* 116 Ariz. 342, 569 P.2d 284 (App.1977). The Commission has authority to determine the actual stationary date and to terminate temporary compensation as of that date. *Id.* The award in our case conforms to *Cardinale* by independently determining the actual stationary date and terminating temporary compensation as of that date.

In *Cardinale,* however, the termination notice complied with Rule 18(A). The only retroactivity problem was the Commission's authority to determine the actual stationary date. In contrast, the notice in our case violates Rule 18(A). Part of the period beyond the retroactivity limit also precedes the actual stationary date. *Cardinale* is inapplicable to a notice that retroactively affects this specific period.

■ The rule plainly states that an offending notice "shall not have retroactive effect for more than thirty (30) days from the date of issuance of such notice...." Rule 18(A). An unambiguous rule should be interpreted to mean what it plainly states. We therefore interpret Rule 18(A) to prevent a change in disability status more than thirty days before the new notice of claim status is issued.

■ The petitioners assert that the claimant must nevertheless prove actual temporary disability. They rely on *Felker v. Industrial Commission,* 134 Ariz. 19, 653 P.2d 369 (App.1982), but this case fails to support the assertion. *Felker* interpreted A.R.S. § 23–1061(M), which imposes a penalty if a carrier fails to deny a claim on time. The statutory measure of the penalty is the compensation payable as if the claim were accepted. *Id.* at 20, 653 P.2d at 370. For this reason alone, A.R.S. § 23–1061(M) penalty benefits require proof of actual temporary disability. *Felker,* there-fore, does not establish the general principle that the claimant must always prove actual temporary disability.

Moreover, the petitioners' analysis completely negates Rule 18(A). If the claimant must prove actual disability, then the carrier or self-insured employer accomplishes indirectly what it could not accomplish directly by notice of claim status. The petitioners also ignore their unilateral power to issue notices determining temporary disability. *See* A.R.S. § 23–1061(F) and (G). Corresponding to this power is the responsibility to issue notices promptly. *See Holmes Tuttle Broadway Ford v. Industrial Commission,* 27 Ariz.App. at 130, 551 P.2d at 579.

Rule 18(A) reinforces this responsibility only if it preserves the preexisting formal disability status. The disability status provided by the last effective notice continues despite an actual change in disability. This formal status may be changed only by another notice of claim status, but this subsequent notice is subject to the retroactivity limit.

This interpretation is consistent with the standard applicable to the rearrangement of a permanent disability award. *See Inspiration Consolidated Copper Co. v. Industrial Commission,* 128 Ariz. 288, 625 P.2d 351 (App.1981). A rearrangement is effective when the formal petition is filed, not simply when earning capacity actually changes. *Id.* at 290, 625 P.2d at 353. *Inspiration* relies on general finality principles to support this conclusion. Although it does not apply these principles to temporary disability, in our opinion these principles are equally applicable to a final notice determining temporary disability status.

For these reasons, we conclude that Rule 18(A) preserves the preexisting formal disability status. In the present case, the last effective notice (i.e., the October 10, 1982 notice) before the January 11, 1983 termination notice is ambiguous. It accepted the claim and provided temporary total compensation for a specific period, December 24, 1981 to February 28, 1982. No compensation was paid after this. On the

other hand, the part of the form for unambiguously indicating that the claimant's disability status was now temporary partial was left blank.

 An ambiguous notice is ineffective if, because of the ambiguity, the notice fails to apprise the claimant of his status. *See, e.g., Bernard v. Industrial Commission*, 24 Ariz.App. 136, 536 P.2d 705 (1975) (late protest excused because claimant misunderstood ambiguous termination notice). In the present case, however, no evidence was presented that the claimant misunderstood the notice accepting his claim and providing limited temporary total compensation. Nor was evidence presented that the claimant detrimentally relied on the notice, which was issued after he had returned to work and lost his job. Furthermore, by not claiming the right to compensation benefits between March 1, 1982, and June 9, 1982, the claimant implicitly concedes that his disability status had in fact changed from temporary total to temporary partial. *See* 2 A. Larson, *Workmen's Compensation Law* § 57.12 (1983).

Under these circumstances, the notice fairly apprised the claimant that his right to temporary total compensation ended on February 28, 1982. A contrary conclusion ignores these circumstances solely because of a technical omission. This, in our opinion, unduly elevates form over substance.

■ The Rule 18(A) violation therefore does not justify the award of temporary total compensation in this case for the period from June 9, 1982 through October 13, 1982. The rule merely preserved the claimant's preexisting disability status, which was not temporary total. His right to temporary partial compensation after February 28, 1982, depends on proof of actual loss of earning capacity. A.R.S. § 23–1044(A); *Western Cable v. Industrial Commission*, 144 Ariz. 514, 698 P.2d 759 (App.1985); *Felker v. Industrial Commission, supra.*

For this reason alone, the administrative law judge improperly awarded temporary

total disability benefits. We therefore set aside the award.

BROOKS, Acting P.J., and GRANT, J., concur.